**IN THE UNITED STATES BANKRUPTCY COURT FOR**
**THE WESTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **In Re:** | ) | |
| | ) | **Case No. 26-23518** |
| **OMNI BAG, INC.,** | ) | **Chapter 11, Subchapter V** |
| | ) | **Judge Jennie D Latta** |
| **Debtor.** | ) | |

# MOTION TO PROHIBIT USE OF CASH COLLATERAL

**COMES NOW**, Truist Bank, successor by acquisition to SunTrust Bank, ("Truist"), by and through its undersigned counsel, and files this motion (the "Motion") to prohibit Omni Bag, Inc.'s (the "Debtor") use of its Cash Collateral (as defined below). In support of its Motion, Truist states as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter and the parties in interest, properties and interests affected hereby pursuant to 28 U.S.C. § 157(b) and § 1334.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M), (N) and (O). Venue is proper before this Court pursuant to 28 U.S.C. § 1408 and § 1409.

3. The statutory and procedural predicates for relief are 11 U.S.C. §§ 363, 541 and Fed. R. Bankr. P. 4001(b).

## INTRODUCTION

4. Truist moves to prohibit the Debtor's use of the Cash Collateral on the grounds that (i) the Debtor has failed to provide Truist with adequate protection and is not making adequate protection payments to Truist; and (ii) Truist has a superior security interest in the Cash Collateral.

## BACKGROUND FACTS

5. The Debtor filed the underlying bankruptcy case on June 30, 2026, (the "Petition Date") under Chapter 11 of the United States Bankruptcy Code.[1]

6. Truist is a secured creditor of the Debtor in the amount of at least $1,678,142.51 as of the Petition Date.[2]

7. Truist is a creditor of the Debtor pursuant to that certain Commercial Note dated June 8, 2006, in the original principal amount of $100,000.00 for the benefit of Truist, which was renewed/restated by a Commercial Note dated November 27, 2017; Promissory Note dated November 16, 2022; and Promissory Note dated September 19, 2025, in the original principal amount of $99,876.17, (collectively, "Note 26").[3]

8. As security for Note 26, the Debtor executed and delivered to Truist Security Agreements dated June 8, 2006, and November 27, 2017, (the "Note 26 Security Agreements"), granting Truist a security interest in all assets of the Debtor, including, without limitation, the Debtor's accounts, inventory, goods, deposit accounts, instruments, documents, general intangibles whether then existing or thereafter arising (the "Personal Property Collateral").[4] Accordingly, all of the Debtor's cash and cash equivalents (the "Personal Property Cash Collateral") are part of Truist's Personal Property Collateral or proceeds of the same.

9. Note 26 and the Note 26 Security Agreements, together with all other documents executed by the Debtor in connection with Note 26, are referred to collectively as the "Note 26 Loan Documents."

---

[1] Doc. 1.

[2] *See* Claim 2-1, Truist's Proof of Claim filed July 29, 2026 (the "Claim").

[3] Claim, Exhibit 1.

[4] Claim, Exhibit 2.

10. On September 24, 2018, the Debtor executed a Business Loan Agreement and Loan Agreement (together, the "Note 83 Loan Agreement") in favor of Truist, evidencing and governing a loan from Truist to the Debtor in the original principal amount of $2,414,000.00.[5]

11. On September 24, 2018, the Debtor executed a U.S. Small Business Administration Note in the original principal amount of $2,414,000.00 for the benefit of Truist ("Note 83").[6]

12. As security for Note 83, the Debtor executed and delivered to Truist a Security Agreement dated September 24, 2018, (the "Note 83 Security Agreement"), granting Truist a security interest in the Personal Property Collateral.[7]

13. Truist perfected its security interests in the Debtor's assets with the filing of a UCC Financing Statement, No. 429780419, on November 30, 2018, with the Tennessee Secretary of State, which was amended by UCC-3 Amendment No. 438583331, and which was continued by UCC-3 Amendment No. 438581888, (collectively, the "Note 83 Financing Statement").[8]

14. As further security for Note 83, on September 24, 2018, the Debtor executed a Hypothecation Deed of Trust (the "Debtor Note 83 Deed of Trust") in favor of Truist, granting Truist a security interest in the Debtor's real property designated as Parcel Nos. 038-00416-001 and 038-00414-000 in Fayette County, Tennessee, (collectively, the "Debtor Real Property Collateral").[9] The Debtor Note 83 Deed of Trust was recorded on October 11, 2018, as Instrument No. 18006244, with the Fayette County Register of Deeds.

---

[5] Claim, Exhibit 3; Claim, Exhibit 4.

[6] Claim, Exhibit 5.

[7] Claim, Exhibit 10.

[8] Claim, Exhibit 11.

[9] Claim, Exhibit 6.

15. As further security for Note 83, on September 24, 2018, the Debtor executed an Assignment of Rents, Profits, and Leases (the "Debtor Note 83 Assignment of Rents") in favor of Truist, granting Truist a security interest in all rents and revenue from the Debtor Real Property Collateral (collectively, the "Debtor Real Property Cash Collateral," and together with the Personal Property Cash Collateral, the "Cash Collateral").[10] The Debtor Note 83 Assignment of Rents was recorded on October 11, 2018, as Instrument No. 18006245, with the Fayette County Register of Deeds.11

16. The Note 83 Loan Agreement, Note 83, the Note 83 Security Agreement, the Note 83 Financing Statement, the Debtor Note 83 Deed of Trust, and the Debtor Note 83 Assignment of Rents, together with all other documents executed by the Debtor in connection with Note 83, are referred to collectively as the "Note 83 Loan Documents," and, collectively with the Note 26 Loan Documents, the "Loan Documents."

## RELIEF REQUESTED

17. Pursuant to 11 U.S.C. §§ 361 and 363(e), Truist seeks to prohibit the Debtor's use of the Cash Collateral. Alternatively, Truist seeks substantive adequate protection of its interests in the Cash Collateral as a condition to continuation of the automatic stay under 11 U.S.C. § 362, the Debtor's use, sale or lease of the Cash Collateral pursuant to 11 U.S.C. § 363, or the obtaining of any credit secured by the Cash Collateral pursuant to 11 U.S.C. § 364.

18. By virtue of Truist's perfected security interest in the Cash Collateral, Truist is entitled to adequate protection of its interests in the Cash Collateral pursuant to Sections 361 and 363 of the Bankruptcy Code.

---

[10] Claim, Exhibit 7.

[11] The individual guarantors of the Debtor's obligations under Note 26 and Note 83 also executed a separate deed of trust and assignment of rents granting Truist a security interest in their personal real property.

19. The Debtor bears the burden of establishing that Truist's interests in the Cash Collateral are adequately protected.[12] The Debtor cannot satisfy this burden.

20. Truist objects to Debtor's use of Cash Collateral, because Debtor has failed to provide Truist any adequate protection, and Truist bears the risk of loss with respect to the Debtor's use of its Cash Collateral and with respect to the diminution of the value of the Debtor's other property.

21. Because the Debtor has not provided adequate protection to Truist, Truist demands that the Debtor segregate and account for any Cash Collateral in its possession and control.

22. The Debtor's failure to provide Truist with adequate protection for the use of its Cash Collateral is a violation of the United States Bankruptcy Code. Under Section 363(c)(2), a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."[13] Section 363(a) defines "cash collateral" as follows:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.[14]

---

[12] *See* 11 U.S.C. § 363(p) (trustee/debtor has burden of proof on "issue of adequate protection"); *see also In re Shivshankar P'ship LLC*, 517 B.R. 812, 825 (Bankr. E.D. Tenn. 2014).

[13] 11 U.S.C. § 363(c)(2).

[14] *Id*.

23. Because cash collateral, once spent, is impossible to recover, the Bankruptcy Code strictly conditions a debtor's use of cash collateral upon the secured creditor receiving adequate protection of its interest in such collateral.[15]

24. If a secured creditor objects to the debtor's proposed use of cash collateral, the court must ensure that the creditor's interests are adequately protected:

> [O]n request of an entity that has an interest in property used . . . the court, with or without a hearing, shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest. [16]

25. The requirement of adequate protection under Section 363(e) is mandatory, and if the adequate protection cannot be provided, then the use of the cash collateral cannot be allowed.[17]

26. By its very nature, the Cash Collateral diminishes in value as it ages and, especially, as it gets utilized in the Debtor's business. Accordingly, Truist's interest in the Cash Collateral will not be adequately protected if the Debtor is allowed to use such property without sufficient adequate protection in a form acceptable to Truist.

27. Truist is entitled either to adequate protection consistent with the value of the Debtor's property and Truist's security interest or an order prohibiting the Debtor's further use of the Cash Collateral.

28. Adequate protection may be provided by requiring cash payments to the extent the use, sale or lease of the security results in a decrease in the value of the entity's interest in the security, providing additional or replacement liens to the extent the use of property decreases the

---

[15] 11 U.S.C. §§ 363(c)(2)(B) and (e).

[16] 11 U.S.C. § 363(e).

[17] *See e.g., Martin v. Commodity Credit Corp.*, 761 F.2d 472, 475 (8th Cir. 1985) (citing 11 U.S.C. § 363(e)); 11 U.S.C. § 363(e) ("the court . . . ***shall*** prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest") (emphasis added).

entity's interest in the property, or granting other such relief that will allow the entity to realize the indubitable equivalent of its interest in such property.[18]

29. While adequate protection may be a flexible concept, this flexibility cannot operate to the detriment of the secured creditor.[19] Regardless of the form that adequate protection takes, a secured creditor is entitled to receive the "indubitable equivalent of such entity's interest in such property."[20]

30. Truist asserts that the mere grant of a post-petition replacement lien will not adequately protect Truist's interest in the Cash Collateral on a going-forward basis. Truist requests monetary and non-monetary forms of adequate protection to protect against the diminution in value of Truist's rights in, its Cash Collateral.

31. Truist is entitled to adequate protection payments and additional forms of adequate protection for the Debtor's use of Cash Collateral. The form of adequate protection is particularly important since the Cash Collateral is soft collateral.

32. Truist asserts that substantive adequate protection is necessary, which should include all of the following: (1) proof regarding the stability in the value of the Cash Collateral and business enterprise; (2) continued operations demonstrating profitability; (3) replacement liens with substantive value; (4) a strong likelihood of reorganization and, most importantly; (5) periodic payments. [21]

---

[18] *See* 11 U.S.C. § 361.

[19] *See In re TeVoortwis Dairy, LLC,* 605 B.R. 833 (Bankr. E.D. Mich. 2019) (citing *In re Martin,* 761 F.2d 472, 477 (8th Cir. 1985)), *In re Shivshankar P'ship LLC*, 517 B.R. at 824.

[20] 11 U.S.C. § 361(3).

[21] *See, e.g.*, 11 U.S.C. § 361.

33. Truist further requests that it be granted an allowed superpriority administrative expense claim pursuant to 11 U.S.C. § 507(b) of the Bankruptcy Code in order to provide Truist with additional adequate protection to the extent that any adequate protection granted by the Court proves insufficient to protect Truist's interest for the use of its Cash Collateral.

34. In light of the foregoing, Truist is entitled to either adequate protection consistent with the value of the Debtor's property and Truist's security interest or an order prohibiting the Debtor's further use of Cash Collateral. Should the Court allow the Debtor to use the Cash Collateral, Truist requests that this Court limit or authorize the use of "only the cash collateral necessary to avoid immediate and irreparable harm to the estate pending a final hearing" as provided and contemplated under Fed. R. Bankr. P. 4001(b)(2).

35. Truist further requests that, should the Court allow the Debtor's use of the Cash Collateral, the Court should condition such use on terms and conditions that fully protect Truist's interest in the Cash Collateral, including, without limitation, that:

a. The Debtor must maintain its Cash Collateral in the same level that existed prepetition and not allow Cash Collateral to diminish.

b. The Debtor must operate strictly in accordance with a budget and spend Cash Collateral not to exceed five percent (5%) above the amount shown in the budget. The Debtor should provide Truist with monthly reports that reflect its actual receipts and expenditures for the prior month. The Court should not authorize the disposition of any pre-petition Collateral outside the ordinary course of business without the prior written consent of Truist.

c. The Debtor must make monthly adequate protection payments to Truist in an amount sufficient to protect Truist's interest during the time the Debtor is permitted to use Truist's Cash Collateral.

d. As additional adequate protection, the Debtor must provide Truist with a valid, perfected lien upon, and security interest in (to the extent and in the order of priority of any valid lien pre-petition), all cash or other proceeds generated post-petition by the Debtor's pre-petition property, and by the use of Truist's Cash Collateral, and without the need to file or execute any document as may otherwise be required under applicable non-bankruptcy law. Truist's liens against the Cash Collateral shall extend to any account holding such Cash Collateral, regardless of whether Truist has control over such account, and encumbers any Cash Collateral held in debtor-in-possession

accounts required by applicable law. Additionally, Truist must be entitled to an administrative expense claim pursuant to 11 U.S.C. § 507(b) to the extent the above adequate protection proves insufficient and/or does not offset any diminution of value in the Cash Collateral. The liens and security interests granted hereunder must be deemed to be filed and perfected by entry of an order granting the same as of the Petition Date without any further action by any party, and must be in the same priority as of the Petition Date.

e. The Debtor must maintain insurance coverage for the Cash Collateral and all other Collateral securing Truist's interests and name Truist as loss payee and certificate holder to such policy. The Debtor must provide proof of insurance upon request.

f. Upon reasonable written advance notice by Truist to the Debtor, the Debtor must grant Truist access to the Debtor's business records and premises for inspection.

g. The Debtor must timely perform all obligations of a debtor-in-possession required by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and orders of this Court.

h. Unless waived by Truist in writing, the Debtor must immediately cease using Truist's Cash Collateral upon the occurrence of one of the following events:

    i. If the Debtor breaches any term or condition of an order granting relief requested in this Motion, other than defaults existing as of the Petition Date;

    ii. If the case is converted to a case under Chapter 7 of the United State Bankruptcy Code; or

    iii. If the case is dismissed.

i. The Debtor must promptly provide to Truist such additional or other financial information as Truist may reasonably request from time to time.

j. The Debtor must waive any claim under 11 U.S.C. § 506 and Truist must not be subject to the equitable doctrine of marshalling.

**RESERVATION OF RIGHTS**

36. Truist's filing of this Motion, any other appearance in the above-referenced bankruptcy case, including the submission of motions, opposition papers and proposed orders, is without waiver of, and Truist expressly reserves, any and all of Truist's rights, defenses and remedies available at law and in equity, including, without limitation, under the Agreements and associated documents, the Uniform Commercial Code, any other applicable federal or state law and/or commercial code, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. Truist reserves all

of its rights to argue or join, at hearing or in further allowed briefing, to supplement and assert additional arguments, terms, conditions, and grounds in support of this Motion.

**WHEREFORE**, Truist respectfully requests that the Court enter an order: (i) prohibiting the Debtor from using the Cash Collateral and requiring the Debtor to immediately segregate an account for all of Truist's interests in the same; (ii) granting Truist a first priority perfected lien on all Cash Collateral as of the Petition Date and hereafter arising and acquired post-petition property of the Debtor's estate to replace Truist's Cash Collateral that the Debtor has used post-petition; (iii) granting Truist adequate protection of its interest for the use of its Cash Collateral; and (iv) granting such other and further relief as the Court may deem just and proper.

Dated: September 18, 2026.

Respectfully Submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

/s/ Malia G. Bennett
Justin Sveadas (TN Bar No. 022305)
Malia G. Bennett (TN Bar No. 041215)
633 Chestnut Street, Suite 1900
Chattanooga, Tennessee 37450
Phone 423.756.2010
Fax 423.756.3447
Email: jsveadas@bakerdonelson.com
mbennett@bakerdonelson.com

***Attorneys for Truist Bank, successor by acquisition to SunTrust Bank***

**CERTIFICATE OF SERVICE**

I hereby certify that on the 18th day of September, 2026, a copy of the foregoing electronically filed *Motion to Prohibit Use of Cash Collateral* was served on the parties listed below by first-class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

Toni Campbell Parker
Law Office of Toni Campbell Parker
45 N. Third, Ste. 201
Memphis, TN 38103

C. Jerome Teel, Jr
Teel & Gay, PLC
79 Stonebridge Blvd
Suite B
Jackson, TN 38305

U.S. Trustee
Office of the U.S. Trustee
One Memphis Place
200 Jefferson Avenue, Suite 400
Memphis, TN 38103

Carrie Ann Rohrscheib
Office of the United States Trustee
200 Jefferson Ave., Ste. 400
Memphis, TN 38103

/s/ Malia G. Bennett
Malia G. Bennett (TN Bar No. 041215)