**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE WESTERN DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **In Re:** | ) | |
| | ) | |
| **OMNI BAG, INC.,** | ) | **Case No. 26-23518** |
| | ) | **Chapter 11, Subchapter V** |
| | ) | **Judge Jennie D Latta** |
| **Debtor.** | ) | |
| | ) | |

**OBJECTION TO CONFIRMATION OF OMNI BAG INC.'S PLAN OF REORGANIZATION**

COMES NOW Truist Bank, successor by acquisition to SunTrust Bank, ("Truist"), creditor in interest in the above proceeding, by and through undersigned counsel, pursuant to 11 U.S.C. §§ 1112, 1129 and 1181-1195 of the Federal Rules of Bankruptcy Procedure and in accordance with the *Order Fixing Time for Filing Acceptances or Rejections of Plan, Combined with Related Orders and Notices Thereof*, and files this objection to confirmation of the *Omni Bags LLC's [sic] Plan of Reorganization* (the "Plan") filed by Omni Bag, Inc. ("Debtor").[1] Truist objects to confirmation of the Plan on the grounds that the Plan is not feasible; is not in the best interest of creditors; unfairly discriminates against and is not fair and equitable to Truist under 11 U.S.C. § 1129(b)(1) or § 1191(c); and does not evidence the Debtor's best efforts to apply all projected disposable income to plan payments under 11 U.S.C. § 1191(c). In support of its objection, Truist would show the Court as follows:

[1] Doc. 35; Doc. 32.

## BACKGROUND FACTS

### I. Transaction Documents

1. Truist is a creditor of the Debtor pursuant to that certain Commercial Note dated June 8, 2006, in the original principal amount of $100,000.00 for the benefit of Truist, which was renewed/restated by a Commercial Note dated November 27, 2017; Promissory Note dated November 16, 2022; and Promissory Note dated September 19, 2025, in the original principal amount of $99,876.17, (collectively, "Note 26").[2]

2. As security for Note 26, the Debtor executed and delivered to Truist Security Agreements dated June 8, 2006, and November 27, 2017, (the "Note 26 Security Agreements"), granting Truist a security interest in all assets of the Debtor, including, without limitation, the Debtor's accounts, inventory, goods, deposit accounts, instruments, documents, general intangibles whether then existing or thereafter arising (the "Personal Property Collateral").[3]

3. Note 26 and the Note 26 Security Agreements, together with all other documents executed by the Debtor in connection with Note 26, are referred to collectively as the "Note 26 Loan Documents."

4. On September 24, 2018, the Debtor executed a Business Loan Agreement and Loan Agreement (together, the "Note 83 Loan Agreement") in favor of Truist, evidencing and governing a loan from Truist to the Debtor in the original principal amount of $2,414,000.00.[4]

5. On September 24, 2018, the Debtor executed a U.S. Small Business Administration Note in the original principal amount of $2,414,000.00 for the benefit of Truist ("Note 83").[5]

---

[2] Claim 2-1, Truist's Proof of Claim filed July 29, 2026 (the "Claim"), Exhibit 1.

[3] Claim, Exhibit 2.

[4] Claim, Exhibit 3; Claim, Exhibit 4.

[5] Claim, Exhibit 5.

6. As security for Note 83, the Debtor executed and delivered to Truist a Security Agreement dated September 24, 2018, (the "Note 83 Security Agreement"), granting Truist a security interest in the Personal Property Collateral.[6]

7. Truist perfected its security interests in the Debtor's assets with the filing of a UCC Financing Statement, No. 429780419, on November 30, 2018, with the Tennessee Secretary of State, which was amended by UCC-3 Amendment No. 438583331, and which was continued by UCC-3 Amendment No. 438581888, (collectively, the "Note 83 Financing Statement").[7]

8. As further security for Note 83, on September 24, 2018, the Debtor executed a Hypothecation Deed of Trust (the "Debtor Note 83 Deed of Trust") in favor of Truist, granting Truist a security interest in the Debtor's real property designated as Parcel Nos. 038-00416-001 and 038-00414-000 in Fayette County, Tennessee, (collectively, the "Debtor Real Property Collateral").[8] The Debtor Note 83 Deed of Trust was recorded on October 11, 2018, as Instrument No. 18006244, with the Fayette County Register of Deeds.

9. As further security for Note 83, on September 24, 2018, the Debtor executed an Assignment of Rents, Profits, and Leases (the "Debtor Note 83 Assignment of Rents") in favor of Truist, granting Truist a security interest in all rents and revenue from the Debtor Real Property Collateral (collectively with the Personal Property Collateral and the Debtor Real Property Collateral, the "Collateral").[9] The Debtor Note 83 Assignment of Rents was recorded on October 11, 2018, as Instrument No. 18006245, with the Fayette County Register of Deeds.[10]

---

[6] Claim, Exhibit 10.

[7] Claim, Exhibit 11.

[8] Claim, Exhibit 6.

[9] Claim, Exhibit 7.

[10] The individual guarantors of the Debtor's obligations under Note 26 and Note 83 also executed a separate deed of trust and assignment of rents granting Truist a security interest in their personal real property.

10. The Note 83 Loan Agreement, Note 83, the Note 83 Security Agreement, the Note 83 Financing Statement, the Debtor Note 83 Deed of Trust, and the Debtor Note 83 Assignment of Rents, together with all other documents executed by the Debtor in connection with Note 83, are referred to collectively as the "Note 83 Loan Documents," and, collectively with the Note 26 Loan Documents, the "Loan Documents."

## II. The Bankruptcy

11. The Debtor filed the underlying bankruptcy case on June 30, 2026, (the "Petition Date") under Chapter 11, Subchapter V of the United States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the Western District of Tennessee.[11]

12. The Debtor recognized Truist as an undisputed, secured creditor in the amounts of $1,545,789.68 and $94,301.00 in its initial Petition.[12]

13. As of the Petition Date, Truist is a secured creditor of the Debtor in the amount of at least $1,678,142.51 which consists of $98,010.48 under Note 26, $1,565,133.27 under Note 83, and attorney fees and expenses in the amount of $14,998.76.[13]

14. Under the Plan, the Debtor proposes that Truist's claim of $1,678,142.51 fall into Class 3A and be "paid over 9 years (96) months with monthly payments of $15,711.35 per month . . . until paid in full"[14] while $93,301.00 attributable to an "SBA loan" is "to be paid in full from available funds on the Effective Date" under Class 3B.[15]

---

[11] Doc. 1.

[12] Doc. 1 at 2.1, 2.2.

[13] *See* Claim.

[14] Nine years would constitute 108 months rather than 96, as prescribed in the Plan. For the purposes of this Objection, Truist has treated the term of Plan payments as nine years or 108 months.

[15] Doc. 32 at 11 of 21.

15. Upon information and belief, the $93,301.00[16] included under Class 3B aligns with the Debtor's scheduled debts owed to Truist.[17]

16. As set forth above, Truist's Claim totals $1,678,142.51 and includes the $98,010.48 owed under Note 26, the $1,565,133.27 owed under Note 83, and attorney fees and expenses in the amount of $14,998.76.[18] Accordingly, the Debtor's classification of Class 3A as the full Claim amount of $1,678,142.51 renders the $93,301.00 included under Class 3B duplicative.[19] The Plan should be amended to remedy this redundancy.

**ARGUMENT**

17. The Small Business Reorganization Act "created Subchapter V under Chapter 11 of the Bankruptcy Code to permit eligible small business debtors 'to file bankruptcy in a timely, cost-effective manner.'"[20] Because Subchapter V is intended to provide an expedited process, some of the requirements that can add layers of expense and complexity involved in a typical Chapter 11 case have been eliminated.[21] Examples of the streamlined and cost-reducing reorganizational features in Subchapter V include the appointment of a Subchapter V Trustee, the ability to pay administrative expenses over time, and the elimination of the absolute priority rule.[22]

18. One of the biggest innovations of Subchapter V was the removal by Congress of the absolute priority rule by replacing it with, among other requirements, the disposable income

---

[16] *See* Claim. The amount owed under Note 26 as of the Petition Date was $98,010.48 and Truist had incurred $14,998.76 in attorney fees and expenses for which the Debtor is liable under the terms of Note 26. Further, Note 26 is not attributable to an "SBA loan," but is instead evidenced by the Commercial Note attached as Exhibit 1 to the Claim.

[17] Doc. 32 at 11 of 21; Doc. 1 at 2.1, 2.2; *see also* Claim.

[18] *See* Claim at Exhibit 12.

[19] Doc. 32 at 11 of 21; Doc. 1 at 2.1, 2.2; Claim at Exhibit 12.

[20] *In re Parking Management, Inc.*, 620 B.R. 544, 549 (Bankr. D. Md. 2020) (citation omitted).

[21] *In re Wildwood Villages, LLC*, 2021 WL 1784408 at * 3 (Bankr. M.D. Fla. May 4, 2021).

[22] *Id.*

test.[23] Under Subchapter V's approach, a debtor "can retain ownership interest … At the expense of and over the objection of creditors," but Congress maintains a proper balance by requiring, among other things, that the Debtor pay its creditors its projected disposable income.[24] The "disposable income test" requires a debtor to make its "best efforts"[25] to commit its entire projected disposable income to pay its creditors for the full duration of the commitment period.[26]

19. Confirmation of a Subchapter V plan is governed by Section 1191 of the Bankruptcy Code. Where, as here, a debtor cannot obtain full consent for the plan (*i.e.,* one or more impaired classes of claims or interests rejects the plan), Section 1191(b) prescribes the rules for cramdown.[27] Under Section 1191(b), the Court shall confirm a plan that satisfies the requirements for confirmation under Section 1129(a), other than paragraphs (8), (10), and (15) of that section, provided that (i) the Plan does not discriminate unfairly against any impaired, non-consenting class and (ii) is "fair and equitable" regarding each class of impaired claims that has rejected the Plan.[28] In order for a plan to be "fair and equitable," 11 U.S.C. § 1191(c) specifies that a debtor must, (i) apply all projected disposable income to plan payments or the value of property distributed under the plan meets or exceeds the debtor's projected disposable income; (ii) make all plan payments; or (iii) be reasonably likely to make all plan payments and include "appropriate

---

[23] *In re Premier Glass Services, Inc.*, 664 B.R. 465, 472 (Bankr. N.D. Ill. 2024).

[24] *Cantwell-Cleary Co. v. Cleary Packaging, LLC (In re Cleary Packaging, LLC)*, 36 F.4th 509, 517 (4th Cir. 2022).

[25] The ABI's task force on Subchapter V concluded that the best efforts test is an "effective substitute for the protections of the absolute priority rule ... and as a practical matter is more beneficial to unsecured creditors." ABI Subchapter V Task Force, Final Report of the ABI Institute Subchapter V Task Force, p. 13 (2024) https://abiorg.s3.amazonaws.com/SubV/SBRA Final Report.pdf, archived at https://perma.cc/C4T7-VA5C.

[26] *In re Pearl Res.*, 622 B.R. 236 at 265-66.

[27] *See* 11 U.S.C. § 1191(b). "Cramdown" is a bankruptcy term of art that refers to the modification of a rights over its objection. *In re Yett*, 306 B.R. 287, (B.A.P. 9th Cir. 2004). Although, the term "cramdown" does not appear in the Bankruptcy Code; it is found in the legislative history. See H.R.Rep. No. 95-595, at 413 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6369; 124 Cong. Rec. 32,407 (1978).

[28] *Id.*

remedies . . . to protect the holders of claims or interests" in the plan.[29] In order for a plan to be fair and equitable, Section 1191(c) is clear that a plan must have a term "not to exceed 5 years." [30]

**I. The Plan is Not Feasible.**

20. A plan proponent bears the burden of proving that its plan is feasible by a preponderance of the evidence.[31] Under Section 1129, a feasible plan must be "firmly rooted in predictions based on objective fact," that show "the plan offers a reasonable assurance of success."[32] Such predictions include "the debtor's financial projections presented to support the plan of reorganization [which must be] derived from realistic and reasonable assumptions which are capable of being met.'"[33] "[A] plan of reorganization which does not reasonably articulate an adequate means by which it is to be implemented [and] simply requires the creditors and courts to rely upon the 'honesty and good intentions' of the debtors . . . is an insufficient basis to satisfy creditors, courts or the standards imposed by the Bankruptcy Code."[34]

21. "The standard for feasibility in a Subchapter V is different than that in a standard Chapter 11 as the debtor must show 1) that 'there is a reasonable likelihood that the debtor will be able to make all payments under the plan' and 2) that 'the plan provides appropriate remedies . . . to protect the holders of claims or interests in the event that the payments are not made.'"[35] In

---

[29] *See* 11 U.S.C. § 1191(c).

[30] *See* 11 U.S.C. § 1191(c)(2).

[31] 11 U.S.C. § 1129(a)(11); *see* also *In re EAS Graceland, LLC*, No. 20-24484, 2021 WL 10395821, at *7 (Bankr. W.D. Tenn. July 20, 2021).

[32] *In re Lapeer Aviation, Inc*., No. 21-31500, 2022 WL 7204871, at *6 (Bankr. E.D. Mich. Oct. 12, 2022) (internal quotation marks and citation omitted).

[33] *In re Fairvue Club Properties, LLC*, No. 309-13807, 2010 WL 4501959, at *3 (Bankr. M.D. Tenn. Nov. 2, 2010).

[34] *In re Southland Invs., Inc*., No. 07-34421, 2009 WL 1971429, at *3 (Bankr. E.D. Tenn. July 2, 2009).

[35] *In re EAS Graceland, LLC*, 2021 WL 10395821, at *7 (citing 11 U.S.C. § 1191(c)(3)).

essence, Section § 1191 "fortifies the more relaxed feasibility test that § 1129(a)(11) contains" and "requires a harder look at feasibility than otherwise conducted under § 1129(a)(11) alone."[36]

22. The Plan does not satisfy the feasibility requirements of Section 1129 or the more stringent requirements set forth in Section 1191. Though the Plan provides that payments will be satisfied by the future income of the Debtor's business, the Debtor has not provided objective facts or analysis sufficient to support its contention that business revenue could support the obligations contemplated under the Plan.[37] Debtor's contention is especially questionable where, as here, the Debtor proposes to make payments to Truist over nine years.[38] In support of its Plan, the Debtor has provided a single monthly operating report for the month of August of 2026 and its "SALES TOTAL" for each month of the years 2023 through 2026.[39] Truist does not find any future projections of revenue in support of the Plan.[40] Ultimately, the Debtor has failed to provide sufficient evidence to assure this Court and its creditors, including Truist, that the Debtor will make all Plan payments over the nine-year term proposed.

## II. The Plan is Not in the Best Interest of Creditors.

23. The "best interests" test of Section 1129(a)(7) requires that all impaired creditors and interest holders fare at least as well under a proposed plan as they would in a Chapter 7 liquidation.[41] Section 1129(a)(7) requires that each member of an impaired class receive or retain under a proposed plan property of a value, as of the effective date of the plan, at least equal to that

---

[36] *In re Nelkin & Nelkin P.C.*, 662 B.R. 550, 562 (Bankr. S.D. Tex. 2024).

[37] Doc. 32 at 14 of 21.

[38] Doc. 32 at 11 of 21.

[39] Doc. 32 at Exhibit 2, Exhibit 3.

[40] *See generally* Doc. 32. The Plan does state, "[s]ee as Exhibit 2 projected sales for 4 years," however, Truist finds no "projected" sales figures. The Debtor's August 2026 monthly operating report immediately follows the Liquidation Analysis appended to the Plan as "Exhibit 1."

[41] 11 U.S.C. § 1129(a)(7)(A).

which the member would receive or retain in a Chapter 7 liquidation, unless the class unanimously accepts the plan.[42] This provision is a cornerstone of Chapter 11 and assures creditors that they will receive at least as much value in the reorganization process as they would if the debtor were liquidated.[43]

24. The Debtor has not demonstrated that the Plan would provide creditors value at least equal to what they would receive in a chapter 7 liquidation. The record before the Court is devoid of any support for the Debtor's purported valuation of its assets. The Liquidation Analysis attached as Exhibit 1 to the Plan contemplates one single figure of $1,687,782.00 as the "Value as of Date of Filing" of the Debtor's assets without further detail or explanation.[44] The Debtor has not even included a generalized inventory of assets in support.[45] Such unsubstantiated Liquidation Analysis fails to show creditors or this Court that the Plan provides creditors with at least as much value as creditors would otherwise receive under a Chapter 7 liquidation.

**III. The Plan Unfairly Discriminates Against Truist.**

25. The Debtor bears the burden of proving that the Plan "does not discriminate unfairly . . . with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."[46] The Plan unfairly discriminates against Truist. Specifically, the Debtor's nine-year payment proposal for Truist's Claim is in stark contrast to the Debtor's proposal "to pay all unsecured creditors in full upon Effective Date for creditors under $25,000 in total claim and any creditor over $25,000 will be paid off with 12 monthly payments till paid in full."[47] The Debtor

---

[42] *Id.*

[43] *See* 7 Collier on Bankruptcy ¶ 1129.02[7]; *see also* 6 Norton Bankr. L. & Prac. 3d § 112:7.

[44] Doc. 32 at Exhibit 1.

[45] *Id.*

[46] 11 U.S.C. § 1129(b)(1).

[47] Doc. 32 at 12 of 21.

has provided no justification for its proposal to pay Truist's secured Claim over nine years while certain unsecured claims are to be paid immediately upon the Effective Date or within twelve months thereof.

**IV. The Plan is Not Fair & Equitable.**

26. The Debtor likewise has the burden of proving that the Plan "is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."[48] With respect to a class of secured claims, the condition that a plan be fair and equitable includes retention of the liens on the property secured by the claim and deferred cash payments totaling at least the allowed amount of the claim.[49] Thus, the Plan must pay the "present value" of the secured claim.[50] A plan that is fair and equitable also requires a debtor to show that, at a minimum, it is reasonably likely to be able to make all payments under the Plan, and to provide appropriate remedies to protect the holders of claims in the event that the payments are not made.[51] A plan of reorganization is not fair and equitable if it shifts the risk and loss of failure of the proposed reorganization onto lenders.[52] In order for a plan to be fair and equitable, Section 1191(c) is clear that a plan must have a term "not to exceed 5 years."[53]

---

[48] *Id.*

[49] *See* 11 U.S.C. § 1129(b)(2); *see also In re Value Recreation, Inc.*, 228 B.R. 692, 696 (Bankr. Minn. 1990).

[50] *In re Value Recreation, Inc.*, 228 B.R. at 696.

[51] *See* 11 U.S.C. § 1191; *see also In re Lapeer Aviation, Inc*., 2022 WL 7204871, at *9–10 (Bkrtcy. E.D. Mich., 2022).

[52] *See* 7 Collier on Bankruptcy 1129.04[4][b][ii] (Lawrence P. King, et. al., eds., 15th ed. Rev. 1997).

> Under § 1191(c)(2), a 'plan is fair and equitable if it (i) proposes to commit all of the debtor's disposable income for the entire term of the plan to making plan payments (or the equivalent thereof); (ii) the debtor is able to make the payments under the plan or there is a reasonable likelihood that the debtor will be able to make the payments; and (iii) the plan provides appropriate remedies, which could include the liquidation of nonexempt assets, to protect creditors if the payments are not made.

[53] *See* 11 U.S.C. § 1191(c)(2).



4900-6635-3112

27. The Plan is not fair and equitable with respect to Truist's Claim due to the Debtor's failure to provide Truist with the present value of its secured Claim under the Plan. Under the Plan, the Debtor proposes that Truist's claim fall into Class 3 and be "paid over 9 years (96) months with monthly payments of $15,711.35 per month . . . until paid in full."[54] The Plan does not contemplate a rate of interest to be paid on Truist's Claim as a result of the deferred cash payments.[55] Accordingly, the Debtor has not shown that the cash payments to Truist contemplated under the Plan, deferred over nine years, will provide Truist with the present value of its Claim.

28. As written, the Plan also shifts the risk and loss of failure of the proposed reorganization onto Truist. Indeed, plan terms that "exceed 5 years" are not "fair and equitable."[56] By proposing payments to Truist over the course of nine years, the Debtor places the risk of failure on Truist.[57] As set forth above, the record does not evidence the Debtor's ability to make payments as proposed for the full nine-year duration of the Plan.[58] The Debtor has not met and cannot meet its burden to show the Plan is fair and equitable to Truist where the Debtor shifts the risk of failure to creditors, like Truist, for the duration of the Plan's nine-year term.

**V. The Plan Does Not Satisfy the Disposable Income Test.**

29. The Debtor has failed to show that the Plan evidences its best efforts to apply all projected monthly disposable income to plan payments as required under 11 U.S.C. § 1191(c)(2).[59] The Debtor concedes that it "is averaging more than $42,000 in net income monthly;" however, the Debtor has not provided sufficient information to assess its anticipated disposable income

---

[54] Doc. 32 at 11 of 21.

[55] *See* Doc. 32.

[56] *See id*.

[57] Doc. 32 at 11 of 21.

[58] *See generally* Doc. 32 at Exhibit 2, Exhibit 3.

[59] 11 U.S.C. § 1191(c)(2).

throughout the duration of the Plan.[60] Even so, under the Plan, the Debtor prescribes monthly payments to any allowed priority tax claims, to Truist in the amount of $15,711.35, and to Monosol, LLC in the amount of $1,803.55.[61] Accordingly, the Plan plainly does not evidence that the Debtor has committed its entire projected disposable income to pay creditors for the full duration of the commitment period as required under 11 U.S.C. § 1191(c)(2).[62] Truist demands that the Debtor amend its Plan to commit all disposable income to payment of its creditors.

WHEREFORE, based upon the foregoing, Truist objects to confirmation of the Plan proposed by Debtor, and prays for an Order denying confirmation of the Plan until such Plan is amended to address the shortcomings set forth above.

Dated: November 9, 2026.

Respectfully Submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

/s/ Justin Sveadas
Justin Sveadas (TN Bar No. 022305)
Malia G. Bennett (TN Bar No. 041215)
633 Chestnut Street, Suite 1900
Chattanooga, Tennessee 37450
Phone 423.756.2010
Fax 423.756.3447
Email: jsveadas@bakerdonelson.com
mbennett@bakerdonelson.com

***Attorneys for Truist Bank, successor by acquisition to SunTrust Bank***

[60] Doc. 32 at 14 of 21.

[61] Doc. 32 at 11 of 21.

[62] *In re Pearl Res.*, 622 B.R. 236 at 265-66.

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of November, 2026, a copy of the foregoing electronically filed *Objection to Confirmation of Omni Bag Inc.'s Plan of Reorganization* was served on the parties listed below by first-class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

Toni Campbell Parker
Law Office of Toni Campbell Parker
45 N. Third, Ste. 201
Memphis, TN 38103

C. Jerome Teel, Jr
Teel & Gay, PLC
79 Stonebridge Blvd
Suite B
Jackson, TN 38305

U.S. Trustee
Office of the U.S. Trustee
One Memphis Place
200 Jefferson Avenue, Suite 400
Memphis, TN 38103

Carrie Ann Rohrscheib
Office of the United States Trustee
200 Jefferson Ave., Ste. 400
Memphis, TN 38103

Scott J. Freedman
Dilworth Paxson LLP
457 Haddonfield Road
Suite 700
Cherry Hill, NJ 08002

/s/ Justin Sveadas
Justin Sveadas (TN Bar No. 022305)